## WAHL v. WRIGHT.

(Court of Appeals of District of Columbia. Submitted May 9, 1921. Decided
Nov. 7, 1921.)

### No. 1346.

1. **Patents ⬤╾91(3)—Evidence held to show that junior applicant made disclosure prior to senior.**
   In interference proceedings, evidence on behalf of the junior applicant *held* to show that a drawing produced by him, which disclosed the invention, was made and exhibited to others several years prior to the date claimed by the senior applicant.

2. **Patents ⬤╾91(3)—Completion of machine held to establish diligence for required time.**
   Evidence that the junior applicant had a completed machine embodying the invention in operation three months after the date allowed the senior applicant shows that the junior applicant was active and diligent for several months prior to the completion of the machine and is sufficient to establish, during the requisite period, diligence resulting in reduction to practice.

   Smyth, Chief Justice, dissenting.

Appeal from the Commissioner of Patents.

Interference proceedings between John C. Wahl and Walter Wright. From a decision of the Commissioner of Patents awarding priority as to all counts in issue to Wright, Wahl appeals as to those counts found to read upon his machine. Reversed.

See, also, Wahl v. Barrett, 50 App. D. C. 391, 273 Fed. 355; Same v. Wright, —— App. D. C. ——, 273 Fed. 766.

Joseph H. Milans and Calvin T. Milans, both of Washington, D. C., for appellant.

W. L. Morris and B. C. Stickney, both of New York City, for appellee.

ROBB, Associate Justice. This is an appeal from a decision of the Patent Office in an interference proceeding awarding priority to the appellee Wright. The invention relates to mechanism for controlling the computations of a totalizer in a combined typewriting and computing machine. More specifically, as stated by the Examiner of Interferences:

"It comprehends two controlling means, one automatic and the other manual, a means whereby one of these is made operative and the other inoperative at will."

The issue originally contained 19 counts. The Examiner of Interferences found that counts 10, 11, 12, 13, 15, 18, 19, and 20 were not readable upon Wahl's disclosure and awarded them to Wright. As to the other counts, he found that Wright was restricted to his filing date of June 29, 1910, for conception and disclosure and that inasmuch as Wahl, on April 1, 1910, had completed and successfully operated a machine embodying the subject-matter of those counts,

awarded them to him. The Board of Examiners in Chief found that count 18 was readable upon Wahl's disclosure, but they also found that Wright had established conception and disclosure of all the claims as early as January of 1910, and that Wahl was entitled to no earlier date than that of the completion of his machine in April, following. This finding resulted, of course, in an award of priority as to all the counts to Wright. The Commissioner affirmed the decision of the Board. Wahl appealed as to counts 1 to 9, inclusive, and 14, 16, 17, and 18; in other words, as to the counts found by the Board to read upon the machine that was completed April 1, 1910.

Wahl introduced in evidence a drawing (Exhibit No. 14), which bore date of July 18, 1907. This drawing was delivered when made to Mr. Roberts, president and treasurer of the Wahl Adding Machine Company, who testified as follows:

"Of a lot of papers, including tracings and blueprints, handed to me at the time, this was the only one on heavy manilla paper. I thought that to fold it up in the small shape necessary to place it in the document files, where I kept such papers, would crease it and spoil the drawing; so I rolled it up and placed it in the cupboard in the vault, where I kept books, original patent papers and other documents which could not be readily placed in the document files."

The drawing therefore was not discovered until after the original preliminary statement had been made. We attach no importance to this fact. Several years had elapsed, the drawing was not in the place where such drawings usually were kept, and it was not at all strange that Mr. Roberts should have forgotten that it had been placed in the vault cupboard. He identified the drawing and stated that, so far as he could judge, it had not been changed.

A Mr. Stevens, formerly president of the Wahl Company, when asked about this drawing said:

"I would say that this is the drawing showed me, or one like it, at least, since it shows the mechanism as I understood Mr. Wahl to explain it."

In cross-examination this witness said: "When Mr. Wahl showed me the drawing he explained to me how it operated." He further testified in considerable detail as to the disclosure made to him at the time, that is, in 1907.

A Mr. Lanphear, at the time in litigation with the Wahl Company, was called as a witness concerning this drawing. He also testified at considerable length for Wright, who characterized him as "one of the best-posted men" he "had come in contact with in connection with machines of this nature." In 1907 Mr. Lanphear was connected with the Wahl Company in the capacity of salesman. He testified that in February or March of 1907 he discussed with Wahl the advisability of perfecting a machine that would accomplish automatic subtraction, and that Wahl immediately began to design means to that end; that he "was in close, practically daily, consultation with him" and that he felt very positive that "that was not only the original subtraction machine commercially, but original automatic subtraction machine." Asked whether Wahl had ever shown him a drawing of a

machine that would perform automatic subtraction, he answered in the affirmative and stated that Wahl explained the operation of the machine to him. The witness then was asked to state his understanding of this drawing at the time it was shown him, and replied:

"My understanding was that it would, in a position at the right of the detail column, automatically subtract, or be set at subtraction; the actual subtracting operation, of course, being accomplished by striking the typewriter keys."

Witness further testified that he understood the mechanism of the machine, how it worked to accomplish the functions it was designed to perform. He fixed the time as between March and September of 1907. He then was shown the 1907 drawing, and thereupon stated that, while he could not identify it in detail, he could say he had seen "such a drawing and it would accomplish these things"; that he could not definitely identify it, but "either saw this one or something like it— I don't know which." He further testified that Wahl's disclosure included means for disabling the automatic subtracting feature and for manual control. This witness was not cross-examined, nor was any objection whatever interposed as to the character of the questions propounded to him. It is significant that the activities of Wright in this particular field did not begin until a time subsequent to an interview which Mr. Lanphear had with him after he had seen the Wahl drawing. We do not intimate, however, that there was any breach of confidence on the part of Mr. Lanphear, as no secret of what he had accomplished was made by Mr. Wahl, who testified very fully as to his activities in conceiving and perfecting this invention.

[1] The tribunals of the Patent Office rejected this drawing of 1907 as a disclosure of the invention here involved, and the board and the Commissioner accepted as to Wright's disclosure in January fragmentary drawings which the Examiner of Interferences characterized as utterly insufficient. We do not deem it necessary to pass upon the correctness of the findings of the Board and Commissioner on this point, as we have reached the conclusion that under the evidence the Wahl drawing of 1907 and the explanation then made must be accepted as disclosing the invention of the issue. Some criticism was made of this drawing because there were certain free-hand additions to it; but the important fact was overlooked that it also contained several parts drawn to scale relating to mechanism necessary for the automatic to manual shift, that is, to the invention of the issue. To reject this drawing would require the rejection as well of the testimony of several witnesses whose credibility stands unimpeached. Mr. Lanphear probably was as well qualified to understand the Wahl disclosure concerning it as any witness who testified. That he did understand it is apparent from his testimony, and it is further apparent that in his testimony he was not at all disposed to go beyond the literal truth.

[2] When we come to consider that all the tribunals of the Patent Office found that Wahl, as early as April 1st, had completed and successfully operated a machine embodying this invention, it will be apparent, without a discussion of the evidence, that Wahl was active and diligent for many months prior to that date. Being fully con-

vinced that Wahl was the first to conceive and that his conception during the requisite period was followed by diligence resulting in reduction to practice, we award him priority of invention and reverse the decision as to the counts here involved.

Reversed.

SMYTH, Chief Justice (dissenting). Wahl is the junior party and therefore, if he would prevail, must sustain the burden of proof. His Exhibit 14 is relied upon by the court as establishing conception and disclosure in 1907. The three tribunals of the Patent Office united in rejecting this exhibit as not sufficiently identified. We have often said that where there are three concurring decisions of the office on a question of fact, we will not reverse the decision of the Commissioner unless he is manifestly wrong. Flora v. Powrie, 23 App. D. C. 195, Bourn v. Hill, 27 App. D. C. 291, Gammeter v. Thropp, 42 App. D. C. 564, and Jobski v. Johnson, 47 App. D. C. 230. The opinion takes no notice of this rule.

When in 1914 Wahl filed his preliminary statement, he was not aware of Exhibit 14, for he made no mention of it in the statement. Not until about a year and a half afterwards did he think of it. Then he asked and obtained leave to amend his statement so as to refer to it. It is a little singular that he should have forgotten so important a document if he ever believed that it existed, as it now is, in 1907 and disclosed the invention. A large part of the exhibit is drawn according to scale by rule and compass, while the other part is in rough and free-hand lines. Wahl does not contend that the first part contains the issue. Every element relied upon by him is in the latter part. If the two parts were made at the same time, why was not a like style of drawing adopted? If not made contemporaneously, when was the addition placed there? These questions are not answered by the record, and this is a cause for suspicion.

Wahl, of course, testified to the existence of the exhibit in 1907 and that it disclosed the invention according to his interpretation. For corroboration he relies upon Roberts, Stevens, and Lanphear. Roberts said he discovered no material difference between the exhibit and the drawing which he saw in 1907, but added that he could not read mechanical drawings readily. He does not say why he was able to identify the exhibit, or that he ever looked at it with a view to seeing what kind of structure it represented. Stevens testified: " * * * My impression is that this drawing [Exhibit 14] has left out a great many parts." Lanphear, the chief reliance of Wahl in this respect, is spoken of as a salesman of unusual intelligence, but one who is not a mechanic or a draftsman. According to his testimony, Wahl showed him the drawing in 1907, but when asked if he recognized Exhibit 14 as the drawing then shown to him, he said: "I don't believe I could identify it in detail." He did not differentiate between the parts he could identify and those he could not. In answer to a question calling for his understanding of the exhibit, he said that it would "automatically subtract, or be set at subtraction automatically." If that was all that it would do, it did not disclose the invention, be-

cause it did not reveal any way of disabling the automatic subtraction feature and of controlling it manually. True, later, in response to a direct question as to whether it did disclose that element, he said briefly, "It did." He was not cross-examined by Wright, presumably because the latter did not believe his testimony aided Wahl in any respect. Goldberg, a patent attorney, who said that in 1907 he "practically had charge of all their patents," and that Wahl consulted him regularly, was called as a witness but was not interrogated with respect to Exhibit 14. If it existed then, and was regarded as disclosing the issue, he would have known it. His silence is significant. The Commissioner of Patents summarizes the testimony thus with respect to Exhibit 14:

"If this testimony be carefully scrutinized, it will be found that Lanphear does not enlighten on just the points necessary. He does not state that he understands this drawing, Exhibit 14, to disclose the invention he had in mind. At best, what he said in reply to leading questions may be construed as meaning that some drawing that Wahl showed him years before disclosed a manual control for disabling the subtracting feature. He was unable to say whether a drawing which Wahl had shown him was the same as the present drawings of Exhibit 14, and so far as any other drawing that Wahl may have shown him is concerned, Lanphear's testimony is worthless, since the other drawing is not of record to show if it disclosed the invention in operative form."

It is upon testimony thus characterized that the court overturns the three decisions of the Patent Office. In my judgment it does not establish by even a fair preponderance that Exhibit 14 as it now appears was in existence in 1907.

But if we assume that its existence at that time is established by a sufficient quantum of evidence, does it disclose the invention? If not, Wahl cannot prevail. The Examiner of Interferences held that there was a serious doubt in his mind as to whether it "shows mechanism capable of carrying out the operation ascribed thereto." The Board said that it failed to disclose the subject-matter of any of the counts, and the Commissioner declared that it was "insufficient to show whether it discloses the invention in operative form." These men are all experts, especially the Commissioner, who was for years principal examiner of the division in the Patent Office in which the applications originated. If the Commissioner's views with respect to it are right, his judgment should not be reversed. What are the views of the court upon the subject? The opinion does not say. Are not the parties entitled to know?

Even if it is assumed that Exhibit 14 shows conception and disclosure by Wahl in 1907, he must still prove that he was diligent when and after Wright entered the field, or fail in the contest. He relies on his Exhibit 2 for proof of this, but the Examiner of Interferences and the Board found that it did not disclose the invention of some of the issues, and the Commissioner did not pass on the question. To overturn the presumption that Wright, being the senior party, is entitled to prevail, there must be a judgment of this court upon the matter; but none is expressly given.

For these and other reasons which might be stated I dissent.