## COLLINS v. LOTZ et al.  MUHLFELD et al. v. SAME.  LOTZ v. COLLINS et al.

(Court of Appeals of District of Columbia. Submitted March 11, 1926. Decided April 5, 1926. Petitions for Rehearing Denied April 24, 1926.)

Nos. 1835–1837.

1. Patents ⊚⇒91(4).

Party to interference proceeding under evidence *held* entitled to priority as to invention for process and device for burning pulverized coal in a furnace.

2. Patents ⊚⇒101—In process and device for burning pulverized coal in furnace, limitation held not so wholly arbitrary as to defeat claim of party with whom it originated.

In process and device for burning pulverized coal in furnace, limitation that furnace have means for admitting fuel substantially vertically downward *held* not so wholly arbitrary as to defeat claim of party to interference with whom it originated.

Appeals from the Commissioner of Patents.

Interference proceedings between Harry R. Collins, Charles W. Lotz, John E. Muhlfeld, and Virginius Z. Caracristi. From a decision of the Commissioner of Patents, awarding priority as to certain counts to Collins, and as to another count to Muhlfeld and Caracristi, all parties appeal. Affirmed.

D. S. Edmonds, of New York City, for Collins.

A. L. Lawrence, of Cleveland, Ohio, for Lotz.

Paul Synnesvedt and H. L. Lechner, both of Philadelphia, Pa., for Muhlfeld and Caracristi.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a decision of the Patent Office in an interference proceeding awarding priority as to counts 1 to 5, inclusive, to the party Collins, and on count 6 to the parties Muhlfeld and Caracristi.

The invention covers a process and device for burning pulverized coal in a furnace. Theretofore considerable difficulty had been experienced through the formation of a molten mass of slag at the bottom of the pit, which was difficult to remove. Under this process, air is admitted beneath the zone of combustion, and the falling ash is cooled below slag-forming temperatures. Counts 1, 2, and 3 cover the process, and 4, 5, and 6 the device. We here reproduce counts 3, 4, and 6 as illustrative:

"3. The herein described process of burning pulverized fuel in furnaces and the like, which consists in admitting the fuel adjacent to a radiating surface of the furnace, in burning the fuel, and in cooling the precipitating ash below substantially slag-forming temperature by permitting it to fall through a cooling zone."

"4. A furnace for burning pulverized fuel having means for admitting the fuel, said furnace being constructed to provide a cooling neutral zone intermediate the zone at which combustion takes place and the ash deposit, said neutral zone being of sufficient depth to cool the ash precipitated therethrough below substantial slag-forming temperature."

"6. A furnace for burning pulverized fuel having means for admitting the fuel substantially vertically downward adjacent to a substantially vertical radiating wall thereof, said furnace being constructed to provide a neutral zone intermediate the zone at which combustion takes place and the ash deposit, said neutral zone acting to cool the ash precipitating therethrough sufficiently to prevent substantial fusion of the ash."

[1] It will be observed that the first five counts are very broad, and cover any process or device embracing a cooling zone under the fuel-burning zone. The examiners in Chief and the Assistant Commissioner, after a careful review of the testimony, held that Collins had established reduction to practice, as to the first five counts, as early as August 6, 1916, through the installation and operation of the device in the boiler furnaces of the Missouri, Kansas & Texas Railroad Company, at Parsons, Kan. We shall not review the testimony upon which these findings are based, except to say that among the witnesses were several disinterested and highly skilled men, including the then assistant superintendent of motive power and the then electrical and mechanical engineer of the railroad. In addition, there was introduced in evidence a letter written immediately after the installation and trial of the device by Mr. W. L. Kellogg, superintendent of motive power of that railroad. We agree with the two tribunals mentioned that the testimony reviewed by them warrants the conclusion reached, and, since the date in question is earlier than any date that can be given the other parties to the interference, it results that the award as to these five counts was correct.

[2] As to count 6, it will be observed that this count contains the limitation that the furnace must contain "means for admitting the fuel substantially vertically downward." It is earnestly contended by Collins that this is a purely arbitrary limitation. See Arbetter v. Lewis, 34 App. D. C. 491, Bungay v. Grey, 52 App. D. C. 63, 281 F. 423, and Brenzinger v. Thornburgh, 52 App. D. C. 298, 286 F. 637. But in the device reduced to practice at Parsons, Kan., the fuel was not

admitted "substantially vertically downward." Inasmuch as this claim originated with Muhlfeld and Caracristi, we are unable to say, from the disclosures in the record, that the limitation is of the arbitrary character insisted upon; in other words, that there is no substantial advantage in admitting the fuel vertically downward.

It results that the decision is affirmed, in each appeal.

Affirmed as to No. 1835.
Affirmed as to No. 1836.
Affirmed as to No. 1837.