54 CCPA

John W. ANDERSON, Appellant,

v.

Anthony C. SCINTA, Appellee.

Anthony C. SCINTA, Appellant,

v.

John W. ANDERSON, Appellee
(two cases).

Patent Appeal Nos. 6941–6943.

United States Court of Customs
and Patent Appeals.

Feb. 16, 1967.

Rehearing Denied May 4, 1967.

524

Richard R. Trexler, Lloyd W. Mason, Chicago, Ill., William A. Smith, Jr., Washington, D. C., for John W. Anderson.

Dos T. Hatfield, Washington, D. C., Edwin T. Bean, Buffalo, N. Y., for Anthony C. Scinta.

Before RICH, Acting Chief Judge, MARTIN, SMITH and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

KIRKPATRICK, Judge.

These consolidated appeals are from decisions of the Board of Patent Interferences in three interferences involving the same parties on a single count in each interference. The interferences relate to windshield wiper blades and involve different combinations of two Scinta applications assigned to Trico Products Corporation and two Anderson applications assigned to The Anderson Company.

The same record and briefs are relied on by the parties in all three cases.

The appeals will be considered here in the sequence, 6942, 6943, 6941, which order we find the most convenient in dealing with the numerous issues presented by the voluminous record.

### PA 6942

This appeal is directed to Interference No. 85,878 bringing into issue the earliest filed of the parties' applications, Anderson application serial No. 634,729, filed December 13, 1945, and Scinta application serial No. 636,548, filed December 22, 1945. Anderson thus is the senior party. The basis of our decision in this appeal is such that the details of the structures need not be set forth other than as will appear in the following discussion.

The board held Anderson to be the prior inventor on the basis that he was first to conceive and first to reduce to practice. It found that he conceived the subject matter of the count by July 27, 1944, prior to any date that Scinta asserts for his own conception, and that Scinta has not proved actual reduction to practice prior to the constructive reduction to practice resulting from the filing of the Anderson application on December 13, 1945.

Scinta argues before us that the board erred in its conclusions as to both Anderson's conception and Scinta's alleged reduction to practice.

We consider the evidence that Anderson conceived by July 27, 1944, to be so conclusive that it is unnecessary for us to consider the point raised by Anderson questioning Scinta's right to question the board's finding to that effect. A sketch bearing the date of July 27, 1944, plainly discloses all of the features required by the count, and Anderson's testimony regarding his making it and sending it to Okleja, an Anderson Company employee who identified his signature thereon as made on that date, is fully corroborated by Okleja and Krohm, another Anderson employee who ultimately was put in charge of developing the Anderson blade.

Among the matters relied on by Scinta to show that Anderson did not have conception of all of the material shown on the sketch by the date in question is a statement in a speech by Anderson in October of 1946 describing the development of his blade as involving many experiments over a period of years, the fact that the blade shown in the sketch was not used to solve a problem associated with aircraft windshields which the Anderson Company faced in 1944, and the fact that the sketch shows all the details of the Anderson commercial blade on which the patent application was not filed until August 7, 1947. In our opinion, these relatively remote circumstances do not cast doubt on the clear direct evidence that the Anderson sketch in question was made and shown to others on the date indicated. Thus, we find no occasion to discuss other evidence which further reinforces his claim of prior conception.

Scinta claims reduction to practice (1) in August and September of 1944 on a mock-up using a Hudson curved windshield, (2) in the fall of 1944 on a Packard mock-up having a curved windshield, and (3) in May 1945 on the mock-up having a Hudson curved windshield. The blades in those tests are not in evidence, but witnesses described them as "identical" or "similar" to blades introduced in evidence as Scinta Exhibits 2, 3, 4, and 15. They are referred to in the record as "Scinta sole" blades.

No written reports giving the results of the tests of these blades are in evidence, the description of the tests being

solely in oral testimony. Scinta himself described the first mentioned test on the Hudson curved glass as follows:

\* \* \* we mounted the glass onto a frame and rigged a motor on there, and operated the motor with vacuum, just the same as it would on a car, and by using a spray nozzle that I made up, using air, I sprayed water, fine mist on it, the motor kept working the same as it would on a car in actual operation.

He further testified that the blade was of the Scinta sole type and that the test was started around August or September of 1944 and carried on continuously for 24 hours a day for possibly two weeks to see "how long it (the blade) would hold up."[1] Scinta testified:

In my opinion, it operated, I would say, as good as you could except on anything that was—I would say it was all right for actual use.

All of the tests consisted of squirting water onto the windshield and operating the wiper blades. There was testimony from witnesses that the blades wiped the water from the windshields satisfactorily. The board said concerning these tests (references to record omitted):

\* \* \* we believe that conditions encountered in actual driving in the rain were not reproduced in the test, which was apparently to see how long the rubber blade and associated parts would hold up. \* \* \* Anderson's statement that there is no evidence of a fan being used is apparently unchallenged and we have previously pointed out that elsewhere Scinta has frankly admitted he ran no wind lift tests.

The evidence concerning the tests of the blades corresponding to Exhibits 3, 4 and 15 (it may be noted that this last was only "pretty good" according to Scinta) is equally deficient in failing to establish that conditions were present reasonably simulating the vibration caused by the engine, the jars caused by travel along a road, and the wind that a windshield is provided to deflect. In view of the novel features previously pointed out, we believe that those conditions should be present in a test to establish an actual reduction to practice of the present invention. Moreover, it must be remembered that the alleged reductions to practice took place before the widespread use of the modern windshield wipers marketed since the Anderson address, differing much from the simple strip of rubber with a rigid backing, attached at its center to an oscillating arm. We do not believe that in 1944 and 1945 laboratory tests of the kind utilized on the blades similar to Exhibits 2 to 4 and 15 would convincingly demonstrate that those devices, having blades flexible in one plane and with superstructure between the blade and operating arm, would operate satisfactorily on the road. \* \* \*

The board also considered testimony of John R. Oishei, Trico president, that a relatively small number of Scinta sole blades were made from temporary tooling as samples for experimental car use and quoted further Oishei testimony as follows:

A. In the normal course of proceduce we would naturally have had word that these blades, A-1 and A-2, as they were delivered, were put in service and during that period we were not being encouraged to tool. We had, of course, reports from time to time of the use made of the blades we were sampling.

Q. That was entirely oral; you have no record whatsoever of any report of any of these blades being actually used on cars, had you? A. I had no written reports.

The board also noted that Trico decided to "abandon" the Scinta sole blade

---

[1] The Scinta sole structure comprised a hollow rubber wiping member with spring elements inside, although such hollow structure is not required by the count. The hollow rubber differing from the solid rubber commonly used in the art, it may well be that durability tests of that feature were deemed necessary irrespective of tests of other blade features for operability.

with its hollow rubber construction in 1947 and ultimately turned to the Rainbow blade, which had solid rubber wiping means with an external flexible backing and a triple yoke, as its production model. Even when a stop-gap supply of blades was needed in the fall of 1947 on an order for Rainbow blades, Trico resorted to a much older split back blade rather than the Scinta sole type.

Scinta contends that the count requires a blade capable of wiping a curved windshield, and that since no cars having curved windshields were available at the time of his tests on the mock-ups, his tests were the only practical means of reducing the invention to practice.

For reasons to be discussed hereinafter in considering PA No. 6943, we do not regard the present count as limited to a wiper for curved windshields. The only tests Scinta relies on here for reduction to practice prior to Anderson's filing date were on mock-ups employing curved windshields, and we think they would be inadequate even if the count were limited to a blade for such windshields.

It is well established that tests under service conditions are not always necessary for reduction to practice, but as we stated in Paivinen v. Sands, 339 F.2d 217, 52 CCPA 906:

> * * * we did not hold [in Elmore v. Schmitt, 278 F.2d 510, 47 CCPA 958] that laboratory testing is unacceptable as a means of proving a reduction to practice, but rather that, for such tests to be acceptable proof of such reduction to practice, a relation-

ship must be established which relates the test conditions to the intended functional setting of the invention.

* * *

We are not satisfied from the record here that Scinta's tests on mock-ups with curved windshields established the relationship to service conditions necessary to reduce the present invention to practice, nor does his assignee's subsequent conduct indicate that it did. The principal test was primarily a test of durability, and the latter tests appeared to be of the same nature although of shorter duration. Apparently water alone [2] was used in most of the tests. However, the obvious possibility that the flexible blade of the count would be more subject to difficulties from wind lift than the previous rigid backed blades cannot be ignored. There is ample evidence that wind lift was a factor to be considered. Thus Scinta, while stating that he gave consideration to the "problem of wind lift," conceded that he did not run any tests for that condition or consider the problem with respect to Scinta sole exhibit blades until either late 1946 or 1947. Also, Oishei regarded wind resistance or lift as a matter to be considered.[3] Considering, among other things, the absence of evidence of tests for wind lift, we agree with the board that those tests were inadequate.

Moreover, the record leaves considerable basis for doubt that the Scinta sole blades actually would operate satisfactorily. Thus Rodak, the only one outside of Trico who testified as to testing a Scinta sole blade, found the blade "so obviously deficient" on a mere prelim-

---

2. The record shows that other laboratory tests which were used in the art employed other materials in addition to or in place of water. Thus Anderson Company conducted laboratory tests using "what is known in automotive engineering circles as 'Arizone muck'" which Anderson regarded as a "standard material" for testing blades in demonstrations. James, the Director of Research at Ford Motor Company, subjected an Anderson blade submitted to him to a test removing "Bon Ami" from the windshield of an automobile. Volcanic dust was used as

a test medium in laboratory tests made by Trico in 1947 to compare the performance of Trico and Anderson blades.

3. Additionally, Scinta Patent No. 2,649,-605, issued on an application filed May 12, 1947, recognizes the factor of wind lift in connection with an improvement in the original Rainbow blade stating that the improvement provides "a low-setting wiper structure that will more effectively resist the lifting action of the wind currents flowing over and across the windshield."

inary check that he did not subject it to the usual further checks which it was the practice of Ford to make if a blade showed "evidence of merit." The absence of evidence that the Scinta sole blade was ever put in production or put on an automobile for test, coupled with the fact that the blade was supplanted by the Rainbow blade, leaves it doubtful that the tests were such as to demonstrate that the Scinta sole blade was ever advanced to a condition where it was capable of satisfactory operation.

█ From the foregoing we conclude that Scinta did not reduce the subject matter of the count to practice prior to Anderson's filing date of December 13, 1945, which fact makes Anderson in contemplation of the law the first to reduce to practice as well as the first to conceive. That conclusion compels the award of priority to Anderson in Interference No. 85,878.

Certain motions, denied by the board, by which Anderson seeks judgment on various grounds do not require consideration at this point.

### PA 6943

Scinta is the senior party in Interference No. 88,638 of this appeal which involves his application serial No. 636,548, filed December 22, 1945, and Anderson's application serial No. 766,956, filed August 7, 1947. The Scinta application is the one in Interference 85,878 (PA 6942) while that of Anderson is a later one showing a refined triple yoke construction substantially the same as the construction adopted by the Anderson Company for production of commercial blades.

The board awarded priority to Anderson on the basis that the record shows him to be first to conceive, as established by evidence of his complete sketching and description of the invention by July 27, 1944, and first to reduce to practice by field testing on a flat windshield in November 1945. The board further held that the tests of Scinta in connection with the mock-ups utilizing curved windshields in August 1944 through May 1945 did not constitute actual reduction to practice.

While the present count differs from that in Interference No. 85,878, the difference does not affect the applicability of the evidence with respect to the conception by Anderson and the alleged actual reduction to practice by Scinta. For reasons set forth in considering Interference No. 85,878, we agree with the board that Anderson was first to conceive and that the tests on mock-ups by Scinta did not constitute reduction to practice.

The remaining priority issue then is whether Anderson reduced the subject matter of the count to practice on a flat windshield in November 1945.

The testimony is clear that Krohm, who was engaged in product development work for the Anderson Company, installed a windshield wiper blade corresponding to the count on his car in November 1945 and that it remained on the car until May 1948. Scinta does not appear to question that the blade was used as stated and performed satisfactorily. His position is that the language of the count requires a reduction to practice on a curved windshield rather than a flat one.

The count reads:

1. A windshield wiper unit comprising an elongated resilient flexible body having a back portion and a wiping edge conformable to a surface to be wiped, a pair of spaced transversely aligned grooves formed in the the body extending substantially throughout the length thereof and positioned between said back portion and said wiping edge, elongated backing means flexible in a plane substantially perpendicular to the surface to be wiped and substantially inflexible in a plane at right angles to said first-mentioned plane, said backing means having a pair of spaced longitudinally extending marginal edges positioned in said transversely aligned grooves, said backing means in its entirety being positioned below said back portion and being normally generally flat and

lying in a plane generally parallel to the surface to be wiped and normally generally at right angles to said wiping edge, in combination with a superstructure for said unit for applying pressure thereto to cause the wiping edge of the flexible body to conform to the surface being wiped, said superstructure including longitudinally spaced apart holder means and a yoke extending lengthwise of the medial portion of said unit, each of said holder means being pivotally connected intermediate its ends to a respective end portion of said yoke and each extending inwardly and outwardly in the direction of the length of said unit from its medial pivotal connection with said yoke, each end portion of each of the holder means including oppositely laterally projecting side portions rigidly related to each other positioned to overlie portions of said backing means inwardly and outwardly of said pivotal connections for exerting downward pressure on the outer portions of said backing means, inwardly and outwardly of the pivotal connections, said laterally projecting side portions having extremities extending downwardly and inwardly below the opposite outer portions of said backing means to straddle the same inwardly and outwardly of said pivotal connections for retaining said marginal edges of said backing means in said grooves, the inner ends of each of said holder means being spaced apart a substantial distance to provide a freely flexible medial span of said backing means.

The board did not accept Scinta's interpretation of the count. The board said (references to record and briefs omitted):

* * * Anderson's application, however, points out that the wiper provides "superior wiping operation against a substantially planar surface to be cleaned" corresponding to the similar statement in his application filed December 13, 1945 involved in companion Interference 85,878 as to the wiper disclosed therein. In our de-cision of even date herewith in Interference 85,878 we pointed out that the Trico Rainbow blade was tested by Scinta in a 1940 Ford with a standard windshield. The Anderson address of October 24, 1946 states that the new blade reaches and cleans the low spots in a flat windshield more effectively than they ever before have been cleaned and a similar statement is in the brochure effective November 1, 1946. The conception sketch dated July 27, 1944 refers to "a better job on flats". Well over a million Anderson blades were sold in 1946 and 1947, the great majority being for use on the so-called flat windshields. Since the blade was priced considerably higher than the flat or rigid back blade it obviously was recognized by customers as having utility on the so-called flat windshields.

As distinguished from the count in prior Interference 83,363, which was for "A wiper for cleaning a curved surface * * *" the count of the present interference is for "A windshield wiper unit comprising an elongated resilient flexible body having a back portion and a wiping edge conformable to a surface to be wiped * * *" containing no reference to curved surfaces, and obviously a flat windshield has a surface to be wiped. Since the "body" is flexible, the count later provides for a superstructure for applying pressure "to cause the wiping edge of the flexible body to conform to the surface being wiped". The so-called triple yoke arrangement obviously provides for such conformity to the surface of a so-called flat windshield, as evidenced by the large number of these devices sold for that purpose. Accordingly, and for the reasons previously stated, it is believed that the present invention can be reduced to practice on a "flat" windshield.

█ We find no error in the board's interpretation. The authority principally relied on by Scinta in arguing that the count requires reduction to practice on a curved windshield, Bowers v. Valley, 149 F.2d 284, 32 CCPA 1039, is

readily distinguishable from the present case. That case related to a two-piece oil control ring for use on pistons of internal combustion engines for the dual purpose of oil control and breaking up and causing removal of carbon. Testing of the ring in a pump where there was no combustion and therefore no carbon problem similar to that encountered in an internal combustion engine was held insufficient for reduction to practice. Where, as here, the device is disclosed as suitable for *alternative* uses, a different situation exists. As stated in an excerpt quoted from the board's decision in Landon v. Ginzton et al., 214 F.2d 160, 163, 41 CCPA 950, 954:

> The patent application may reveal a number of purposes for the same invention. The inventor need prove only one practical use; only one useful result or effect. * * *

█ We are satisfied that Anderson has proved reduction to practice of his blade on the windshield of Krohm's car in November 1945. Thus Anderson was, as the board held, the first to reduce to practice as well as first to conceive so that discussion of Anderson's other activities in reducing the invention to practice is unnecessary.

Various motions raised by Anderson do not require determination here.

█ Anderson must prevail in Interference No. 88,638 as the first to conceive and the first to reduce to practice.

### PA 6941

Scinta is also senior party in the interference of this appeal, No. 86,266, involving his application serial No. 676,974, filed June 15, 1946, and Anderson application serial No. 766,956, filed August 7, 1947. This Scinta application discloses a wiper comprising a plurality of flexible metallic members disposed within a hollow rubber wiping member as in Scinta's earlier application although there are differences in details. Anderson's application is the one in Interference No. 88,638, showing the advanced construction corresponding substantially to the commercial form of his blade.

The single interference count is as follows, emphasis being added to words critical in the determination of the appeal:

1. A windshield wiper unit comprising an elongated resilient flexible body having a back portion and a wiping edge conformable to a surface to be wiped, a pair of transversely aligned grooves formed in the body extending substantially throughout the length thereof and positioned between said back portion and said wiping edge, elongated backing means flexible in a plane substantially perpendicular to the surface to be wiped and substantially inflexible in a plane at right angles to said first mentioned plane, said backing means having a pair of longitudinally extending edges positioned in said pair of transversely aligned grooves, in combination with a superstructure, said superstructure including spaced apart integral clamp means having their end portions partially surrounding parts of said back portion and said backing means for retaining said backing means in lateral engagement with said grooves, the end portions of each of said clamp means being longitudinally rigidly aligned with each other, and all said clamp means having longitudinal sliding movement with respect to said unit, *whereby said unit in adjusting to surface curvature is free to slide with respect to all clamp means,* and means for applying pressure at spaced apart points to said unit to conform the wiping edge thereof to the surface being wiped, said pressure applying means including an elongated bridge member rockably connected adjacent its ends with said clamp means substantially medial the ends of each of the latter, *said unit intermediate said clamp means providing a free medial span capble of elongation in conforming to irregular curvatures by lengthwise movement of said unit in said clamp means.*

The board held that Scinta was prior by reason of his constructive reduction

to practice and that Anderson, although first to conceive, did not prove the exercise of reasonable diligence for the period beginning just prior to Scinta's conception and extending until he filed his application.

We agree with the board that Anderson was the first to conceive and that Scinta has not proved reduction to practice prior to his filing date. However, this appeal raises the additional issues, whether Anderson has proved actual reduction to practice of the count, the date of conception by Scinta, and whether Anderson has proved diligence.

In construing this count the board held that it defines a wiper blade for wiping a curved windshield and that the use of a blade on the flat windshield of Krohm's car beginning in November 1945 did not reduce the invention of the count to practice. The board said (with references to record omitted):

> Scinta urges that the count of this interference requires the unit to conform to a regular curvature. Actually, the count recites, "all said clamp means having longitudinal sliding movement with respect to said unit, whereby said unit in adjusting to *surface curvature* is free to slide with respect to all clamp means" and "said unit intermediate said clamp means providing a free medial span capable of elongation in conforming to *irregular curvatures* by lengthwise movement of said unit in said clamp means" (emphasis added in both instances). Such expressed language of function, capacity or capability has been held to be a material part of a count (McKee v. Noonan, 24 CCPA 784, 86 F(2) 986, 1937 C.D. 178, 479 O.G. 277; see also the means plus function limitation referred to above in connection with Collins v. Lotz, [56 App.D.C. 239, 12 F.2d 180] etc.) Scinta with whom the language originated states at the beginning of his specification that the invention has particular reference to a wiper for curved windshields. Similarly, Anderson's specification states that the invention "more particularly is directed

to a device adapted to clean or wipe a curved surface as well as a substantially plane surface." In view of these statements of a primary object of the invention and the explicit language in the count here in issue, we believe that to establish a reduction to practice, the wiper should be used on a windshield having "surface curvature" and "irregular curvatures" on the surface being wiped. (Compare the requirement of the use of a meter for a reduction to practice of "means for spacing the two service pipes of a meter" in McKee v. Stevens, 23 CCPA 701, 79 F(2) 914, 1936 C.D. 51, 462 O.G. 673). Krohm merely states that the car the blade was used on had "a flat windshield", and does not establish that the surface wiped had the "surface curvature" and "irregular curvatures" recited in the count. Accordingly, his testimony does not establish facts demonstrating that in the device tested the wiper unit satisfactorily adjusted to surface curvature or satisfactorily conformed to irregular curvatures. In view of the principles previously stated *we hold that the test of this blade has not been proven to be a reduction to practice of the invention here in issue.* [Last emphasis added.]

We agree with the board. Swan v. Thompson, 80 F.2d 374, 23 CCPA 806, cited by Anderson, is not authority for reaching a contrary conclusion. There certain counts to a safety razor were deemed reduced to practice by successful testing of the razor even though it was not tested to demonstrate that recessed portions in the blade would prevent breaking or distorting the blade if a guard corner were bent as recited in the counts. The holding was supported by a finding that the latter capability was self-evident without special testing. In the present case it is not self-evident. The wiping of curved windshields constituted a problem not adequately solved by prior constructions and the flexible-backed blade being tested was a new construction. There thus was no sound reason for concluding that tests showing

that Anderson's blade worked successfully on a flat windshield guaranteed that it would operate satisfactorily on a curved windshield.

There is also evidence that Anderson's blades were tested to a certain extent in the laboratory on flat and curved glass with the blades motor driven and with a water spray and with the glass daubed with other material. However, those tests were not fully described as to structure of blade, time and exact nature of tests, and results obtained. So far as they were described, they were subject to deficiencies similar to the laboratory tests of Scinta which have previously been found insufficient. The same is true of a demonstration made on an experimental car standing still in a garage at the Ford Motor Company, and, in addition, the corroborating witness James could not recall the structure of the blade involved. Tests on a car belonging to Okleja at about the same time as the tests on Krohm's car suffered from the dual deficiencies of being on a flat windshield and involving a blade lacking a feature of the count, the clamp means with longitudinal movement. Thus, Anderson has not proved actual reduction to practice prior to his filing date.

■ Anderson also contends that he is entitled to constructive reduction to practice on the basis of his patent No. 2,596,063, issued on his application of December 13, 1945. That point was first raised in a request for reconsideration of the board's original decision. The board noted that Anderson had not complied with the requirement of the Rules of Practice effective March 1, 1949 (Rule 224),

> A party will not be permitted to rely on a prior application to obtain the benefit of its filing date unless the prior application is specified in the notice of interference or is set forth in the preliminary statement.

We agree that Anderson's belated request was correctly denied.

With Anderson first to conceive but last to reduce to practice, the determination of Scinta's conception date becomes necessary before considering whether Anderson exercised requisite diligence.

■ After consideration of the evidence, the board concluded that Scinta established conception and disclosure of the structure of the count by September 28, 1944, the date on which Scinta's patent attorney Brooks docketed the patent case which resulted in filing of the earlier Scinta sole application serial No. 636,548, filed December 22, 1945, and involved in the other two appeals here. Brooks testified that on that date he had in his possession a model wiper from which the drawing of the earlier application was made, and that the model was identical with that in evidence as Scinta Exhibit 2 except for a detail immaterial here. The board noted that such construction permits movement between the rubber wiping element and the clamping means, and our own inspection of Exhibit 2 verifies that conclusion. That testimony, together with other evidence, establishes beyond a reasonable doubt that Scinta conceived the subject matter in issue by September 28, 1944.

■ The period over which Anderson must show reasonable diligence thus extends from just prior to September 28, 1944, to his filing on August 7, 1947. We find that Anderson has failed to establish diligence, either his own or on his behalf, over the required period. After conception in 1944, the development of the Anderson blade was put in charge of Smulski, an Anderson Company engineer. However, except for some work on some very early blades, which did not meet the count, Krohm did the development work and in June of 1945 took over completely. Although the count recites "all said clamp means having longitudinal sliding movement with respect to said unit," Krohm testified that it was not until September or October of 1945 that he first experimented with a superstructure where both ends slid on the flexors. Krohm stated that the reason for his delay in trying this essential feature was that it was his own belief that the flexors should be held

firm. While Anderson mentioned the sliding feature to Krohm many times, he consented to Krohm's experimenting with his own work on his own idea first.

Smulski testified that he spent very little time on the development because he had many other jobs and that he "didn't want to go to the whiffle tree," (the triple yoke structure of Anderson's blade) because he thought it would not be useful for aircraft with which he seemed to be principally interested. The early experiments by Smulski and Krohm utilized a rubber wiper that was used in the rigid back blade made by the Anderson Company. Although Krohm thought the development had reached a point to justify ordering a mold for a new rubber by late 1944, he did not talk to Smulski about doing so until the early part of 1945. Even then Smulski decided to wait longer.

From the foregoing, it is clear that the two persons assigned to develop Anderson's invention put but limited time into the project prior to the summer of 1945 and, what is more important, worked during that period on constructions lacking one or more essential features of Anderson's disclosure. Anderson has failed to show diligence for the critical period and cannot prevail over Scinta, who was first to file his application.

However, various motions by Anderson, some corresponding to motions brought in the other interferences but not requiring consideration there, do require determination in this interference.

Anderson moves for judgment in his favor on the ground of res judicata, by reason of the fact that he prevailed in Interference No. 83,363, Scinta and Rappl v. Anderson, between the same parties in interest, but involving different applications. In that earlier interference the present count was not involved.

In the Patent Office as elsewhere there must be an end to litigation. Therefore, estoppels in the nature of those known to the doctrine of res judi-

cata have been applied to Patent Office proceedings. In the case of International Cellucotton Products Co. v. Coe, 85 F.2d 869, 66 App.D.C. 248, the Court of Appeals for the District of Columbia took the view that the estoppel was limited strictly to matter which would have been barred by estoppel by judgment. Thus the court held that no estoppel arose where the applicant against whom estoppel was asserted could not have made the challenged count in the prior interference because there was no support in his application for it.

The Court of Customs and Patent Appeals disagreed and expanded, rather than limited, the estoppel by holding, in Avery v. Chase, 101 F.2d 205, 26 CCPA 823, that an estoppel in pais would be applied against an applicant who had failed to act under former Rule 109 in a previous interference. Although his application in that interference did not support the count, the application of at least one other party thereto did. The rule thus would have permitted him to successfully move to establish the second interference involving a different application of his and that of such other party. In the present case Anderson's application in the earlier interference, No. 83,363, would not support the present count. The same is true of Trico's Scinta and Rappl application then in interference,

We find no error in the finding of the board that the Anderson case does not meet the limitation in the count of "all said clamp means having longitudinal sliding movement with respect to said unit." Scinta argues in his brief that the only modification shown in the former Anderson case which discloses any sliding movement between the clamp means and the unit is Figure 11 of the drawings where the two clamp means which are in the center are staked to the backing strip and cannot slide relative thereto. Anderson's brief before us does not set forth any convincing reason why the position of the board and Scinta on this point is not correct and we find none. Scinta also urges in his brief that

the Scinta and Rappl application in the earlier interference fails to disclose the clamp means as serving the purpose of retaining and backing means "in lateral engagement with said grooves" as required by the present count. That position also appears to us to be sound and is not directly controverted.

On these facts we do not think the holding of Avery v. Chase, supra, is controlling. The subject matter of the present interference was not before the Patent Office in the earlier interference, and former Rule 109 was not construed in the case of Avery v. Chase to require that matter foreign to all applications in a pending interference be brought into it by amendment. Under our view of the holding in that case, there is no estoppel upon the facts of the case before us. We, therefore, affirm the board's denial of Anderson's motion based on res judicata.

■ Anderson also moved to dissolve the present interference on grounds of lack of support for the count in the Scinta application and delay in claiming by Scinta. The board declined to disturb the action of the examiner denying those motions.

In urging lack of support Anderson raises two contentions. One is that the Scinta application does not support the portion of the count reciting "all said clamp means having longitudinal sliding movement with respect to said unit, whereby said unit in adjusting to surface curvature is free to slide with respect to all clamp means." The board noted that Anderson urged that movement of the link members relative to the rubber wiping element does not result in a force tending to cause the clamp means to move. However, the board observed that the count does not require that the clamp must always be moved but only that the body or "unit" is free to slide with respect thereto.

Finding, as did the examiner, that there is such freedom to slide in the wiper blade that Scinta discloses, the board held that the application as filed supports the count. We find no error in that holding. The application specifically states that the side flanges or jaws on the clamp means "slidably embrace" the rubber blade or wiping element and the structure illustrated clearly does not bar such relationship.

■ Anderson's motion also advances the contention that Scinta's application lacks support for the count recitation of "a pair of transversely aligned grooves formed in the body," which body is the flexible rubber wiping means. It is in these grooves that the elongated flexible backing means or flexors are stated to be disposed. It is true that the Scinta sole structure differs greatly from Anderson's blade, the former employing a hollow rubber member of triangular cross-section with the flexors disposed at the top of the hollow portion against the flat inner top side thereof. However, there is a recessed shoulder below each end of the top side contacting the lower surface of the edge of the flexors. Thus, Scinta has means which receive and confine the edges of the flexors within the rubber members to conform to the broad requirement of the count which is met by the external grooves of Anderson. We thus agree with the board that Scinta meets the recitation of aligned grooves in the count.

■ One final question raised by Anderson's motion to dissolve involves the contention that Scinta has no right to contest priority because no claim directed to the subject matter of the count was made in the Scinta application until more than one year subsequent to the date that the subject matter in issue was disclosed in printed copies of Anderson's speech of October 1946, which copies have a publication date of November 1, 1946. The board held that this question is not ancillary to priority and thus cannot be considered in these proceedings. We agree.

The present contention questions whether the count is patentable to Scinta but it does not affect the issue of whether Scinta is the prior inventor. It is firmly established that such questions of patentability are not ancillary to priority and are not to be considered in decid-

ing priority. Hendrickson & Nelson v. Ronning & Ronning, 76 F.2d 137, 22 CCPA 1040; Loukomsky v. Gerlich, 264 F.2d 907, 46 CCPA 805.

The decision of the board in PA 6941 is affirmed.

In summary, the decisions of the board awarding priority to Anderson in PA 6942 and 6943 are affirmed and the decision awarding priority to Scinta in PA 6941 is affirmed.

Affirmed.

MARTIN, J., participated in the hearing of these cases but died before a decision was reached.